**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-1178 RLW |
| | ) | |
| JASON TURNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on two motions for an emergency temporary restraining order or preliminary injunction filed by self-represented plaintiff Paul Wilson, an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDCC"). (ECF Nos. 5, 6.) For the reasons discussed below, plaintiff's motions will be denied.

**Background**

On September 30, 2021, self-represented plaintiff Paul Wilson filed the instant action on a Court-provided form complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff names as defendants seven employees of the ERDCC in their official and individual capacities. His statement of the claim is single-spaced, handwritten, and presented on approximately thirty-four pages of notebook paper.

Plaintiff alleges the entire justice system, including the named defendants, are involved in a conspiracy to keep him imprisoned and enslaved. Plaintiff describes his interactions with non-defendant police officers, state court judges, and public defenders since 1980, as well as his attempts "in the 90s and early 2000s" to expose the justice system as an "underground illegal slave racketeer" and the prison staff as undercover gay men.

Plaintiff states he was convicted of rape in 2006, sentenced to twenty-five years of imprisonment in the Missouri Department of Corrections, and placed in protective custody because the victim's son put a "hit" on his life. In 2021, plaintiff was transferred to ERDCC and allegedly placed in administrative segregation without access to his property. He takes issue with the attempts of defendants to assign him a cellmate. Plaintiff asserts he has a constitutional right to be placed in protective custody despite his refusal to submit an enemy waiver which defendants have informed him is a requirement for protective custody status. Plaintiff asserts he should not receive conduct violations for his refusal of a cellmate, and complains defendant John Doe sprayed him with chemicals in September of 2021. Plaintiff believes the correctional officers have a "standing war" against him because of his attempts to expose the truth.

## Motions for a Temporary Restraining Order

Along with his complaint, plaintiff filed two motions for a temporary restraining order. (ECF Nos. 5, 6.) The first motion seeks "emergency relief from defendant Jason Turner, the Functional Unit Manager of Housing Unit (H.U.)  One (1) . . . to restrain [him] from housing the Covid-19 Quarantine inmates in this housing unit[.]"  (ECF No 5.)  Plaintiff asserts there are three wings in H.U. 1 and the "air system is connected."  Plaintiff claims defendant Turner is deliberately attempting "to have [the inmates in H.U. 1] catch the [corona]virus and die from it to cut down the prison population of those they deem undesirable[.]" Plaintiff also states there is a "serious issue of general population inmates being housed in the same housing unit as protective custody prisoners," which "is done to instill fear, and intimidate" inmates in protective custody.

The second motion for a temporary restraining order asks the Court to order the ERDCC to place him on single cell status. Plaintiff asserts he learned there was a hit out on his life after he

2

was attacked at the St. Louis Justice Center in 2006. (ECF No. 6.) Although he is currently housed in ERDCC's administrative segregation, he wants to be in protective custody with access to "property and privileges." Plaintiff complains he is not permitted the same number of blankets and sheets as the general population, is denied hair grease and body lotion, and cannot buy food and drinks from the canteen. Plaintiff further requests the Court to restrain defendants from using "chemical warfare" against him because he refuses "to double cell with an inmate." In both his motion and complaint, plaintiff alleges he was "sprayed with chemicals" on one occasion on September 2, 2021. Plaintiff further complains about a past incident in which ERDCC staff escorted him through the general population. Plaintiff appears to request the Court to order the institution to keep him entirely segregated from the general population.

Attached to his second motion for a temporary restraining order is an affidavit from Frankie Tatum, an inmate at ERDCC. (ECF No. 6-1.) Mr. Tatum asserts plaintiff told him he was subject to a routine cell search and handcuffed to a bench for forty-five minutes because he refused to accept a cellmate. Mr. Tatum also states the ERDCC is housing Covid-19 quarantined inmates in the D-wing of H.U. 1 despite the fact that the entire housing unit's ventilation system is connected.

## Discussion

A Court issues injunctive relief in a lawsuit to preserve the status quo and prevent irreparable harm until the Court has the opportunity to rule on the lawsuit's merits. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). In determining whether to grant a preliminary injunction, the Court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and

(4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). These same standards also apply to a request for a temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming application of *Dataphase* factors to a motion for a temporary restraining order). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting" injunctive relief. *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

"The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982). Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The Court is mindful of the Eighth Circuit's admonition that "in the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d at 1214). "It is therefore all the more important that federal courts abstain from imposing strict standards of conduct, in the form of injunctions, on prison officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief." *Rogers*, 676 F.2d at 1214.

Here, plaintiff has not carried his burden of showing that a temporary restraining order or preliminary injunction should be issued. A party moving for a temporary restraining order must necessarily establish a relationship between the injury claimed in the motion and the conduct asserted in the complaint. *See Devose*, 42 F.3d at 471. Plaintiff's concern for being housed in the same unit with Covid-19 quarantined inmates was *not* an issue raised in his complaint. The complaint is completely devoid of allegations regarding the ERDCC's coronavirus pandemic response. Plaintiff's assertions cannot provide the basis for a restraining order in this lawsuit because the necessary relationship between the injury claimed in his motion and the conduct asserted in his complaint is lacking. Thus, even if plaintiff prevailed on the merits of his complaint, his success on the merits would be irrelevant to the issues regarding the ERDCC's placement of quarantined inmates as set forth in plaintiff's motion for a restraining order. *See Beyer v. Woods*, 2015 WL 331132, at *3 (E.D. Mo. Jan. 26, 2015) (denying motion for injunctive relief because it was "based on new assertions of alleged violations of [plaintiff's] constitutional rights that [were] different from the allegations in plaintiff's complaint").

Plaintiff's request for this Court to order the ERDCC to place him in protective custody with single cell status and completely separate him from the general population will also be denied. Plaintiff has not established the threat of irreparable harm if a preliminary injunction and temporary restraining order are not issued, and these are not the types of claims that are likely to succeed on the merits. "[C]onstitutionally speaking, assignments [by correctional institutions] are discretionary, so long as they are not done for prohibited or invidious reasons and do not rise to independent constitutional violations on their own weight." *Moorman v. Thalacker*, 83 F.3d 970,

973 (1996) (citing *Vitek v. Jones*, 445 U.S. 480 (1980); *Sisneros v. Nix*, 884 F. Supp. 1313, 1346 (S.D. Iowa 1995)).

Plaintiff asserts he is fearful for his safety because he was attacked in 2006 at the St. Louis Justice Center and learned the victim's son put a "hit" on his life. Plaintiff has not, however, presented any factual allegations to show he has experienced present problems with a member of the general population at the ERDCC or that he is being threatened by a specific inmate. While plaintiff alleges correctional officers have attempted to place him with a cellmate, his complaint is unclear as to whether he currently has a cellmate and, if so, whether that cellmate has posed any serious threat of harm. In other words, plaintiff does not allege that any specific incident occurred to show a presently existing actual threat. In fact, plaintiff admits in his complaint that when given the opportunity to seek protective custody status, he could not provide the institution with a name of an individual he fears in general population. *See* ECF No. 1 at 26-27.  Plaintiff remains in administrative segregation and "[a] prison is not required to maintain a separate protective custody unit or to assign every inmate to one who wants to be there."  *Robinson v. Crawford*, 2008 WL 544968, at *2 (W.D. Mo. Feb. 27, 2008). Plaintiff's assertion of the possibility of a remote future injury is not a sufficient basis for the issuance of a temporary restraining order.

To the extent plaintiff requests the Court to direct the ERDCC to grant him access to the same items as permitted in the general population, such as hair grease or additional blankets, this request is also denied. These "decisions are best left to prison administrators and [plaintiff] is unlikely to succeed on a claim that the denial of all items permitted in general population violates his constitutional rights." *Nathan v. Watson*, 2020 WL 3473455, at *2 (S.D. Ind. June 25, 2020). Furthermore, the harm of being denied his personal effects or other conditions while in segregation

could potentially be compensated after a full trial on the merits. Such potential "harms" do not constitute the irreparable harm necessary to obtain preliminary injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Hughes Network Sys., Inc. v. InterDigital Comm'ns Corp.*, 17 F.3d 691, 693-94 (4th Cir. 1994) (noting a preliminary injunction is not generally available where the harm at issue can be remedied by money damages).

Finally, plaintiff requests the Court to restrain defendants from using "chemical warfare" against him or to issue him grievances because he refuses to double cell with an inmate. In both his motion and complaint, plaintiff alleges he received a conduct violation and was "sprayed with chemicals" on one occasion in September of 2021. Such an allegation falls short of demonstrating the kind of irreparable harm that preliminary injunctive relief is designed to prevent. Plaintiff provides no evidence that his life is any imminent danger due to defendants' disciplinary actions on one occasion. To the contrary, his argument is founded on an alleged past harm, and there is no evidence presented that if the Court does not grant the immediate relief he requests there will be an irreparable injury to plaintiff.

The Supreme Court has stated, "It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez,* 411 U.S. 475, 491-92 (1973). States have an important interest "in not being bypassed in the correction of those problems." *Id.* at 492. Plaintiff's request for injunctive relief appears to be an attempt to circumvent the ERDCC's internal operating, inmate assignment, disciplinary, and grievance procedures. This Court cannot substitute its judgment for the State's about matters involving prison administration. Because plaintiff has not submitted sufficient evidence or put forth allegations

7

demonstrating he is entitled to injunctive relief against the defendants, his motions for a temporary restraining order will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for an emergency temporary restraining order or preliminary injunction [ECF Nos. 5, 6] are **DENIED**.

Dated this <u>12th</u> day of October, 2021.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

8